**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Bradley J Ruggles,

        Plaintiff,

v.

State of Arizona, et al.,

        Defendants.

No. CV-24-00856-PHX-DWL

**ORDER**

Bradley Ruggles ("Plaintiff") has sued his former employer, the Arizona Department of Veteran Services ("ADVS"), and his former colleague, Angela Reboul ("Reboul") (together, "Defendants"), alleging that Defendants subjected him to sex- and gender-based discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), violated various Arizona statutes protecting workers' rights, and committed certain other torts.

Now pending before the Court is Defendants' motion to dismiss.  (Doc. 22.)  For the reasons that follow, Defendants' motion is granted but Plaintiff is granted leave to amend so as to name the State of Arizona as a defendant.

## BACKGROUND

The following facts, derived from the First Amended Complaint ("FAC") and various EEOC administrative documents submitted by both sides, are presumed true for the purposes of this order.

…

I.    Parties

ADVS "is a state agency with its principal place of business in Maricopa County, AZ." (Doc. 19 ¶ 15.)  Before his termination, Plaintiff was employed by ADVS as an Assistant Director of Nursing ("ADON").  (*Id.* ¶ 19.)  Reboul is a nurse and an ADVS employee.  (*Id.* ¶¶ 15, 21.)

II.    Relevant Facts

A.    **Reboul's Accusations**

Beginning in 2022, Plaintiff "was dealing with ongoing behavior and performance issues" concerning Reboul.  (*Id.* ¶ 21.)  "Part of Plaintiff's duties and obligations as ADON was the day-to-day management [of] other employees, including enacting appropriate disciplinary actions when warranted."  (*Id.* ¶ 20.)  Plaintiff "sought input" from "[s]everal members of ADVS" regarding Reboul's performance issues and "harassment activities," including input from Administrator Jeffrey Cook ("Cook"), one of the Directors of Nursing ("DON").  (*Id.* ¶¶ 22-23.)  "Plaintiff recommended implementation of a performance improvement plan (PIP) for Reboul" and "all others involved agreed to this course of action."  (*Id.* ¶ 24.)  "Plaintiff provided the PIP to Reboul and discussed the next steps, which included covering another unit for a Nurse Supervisor."  (*Id.* ¶ 25.)

"A day before Reboul's one-month training to cover the Nurse Supervisor's position . . . was set to begin," "Reboul stated she could not take this assignment and indicated a refusal to move forward."  (*Id.* ¶ 26.)  "Plaintiff attempted to resolve this issue with Reboul to no avail, and finally stated that he had to move forward with the PIP but if [Reboul] wanted to seek guidance from management she was welcome."  (*Id.* ¶ 27.)  "Reboul was set to meet with the [DON] to discuss a resolution to her situation, yet before this meeting took place Reboul submitted a six-page written complaint to human resources (HR) which . . . contained several serious accusations against Plaintiff, as well as false statements meant to damage Plaintiff's reputation and career."  (*Id.* ¶ 29.)  Meanwhile, unaware of the accusations against him, Plaintiff "reached out to HR to ask about reassigning Reboul given the ongoing issues."  (*Id.* ¶¶ 30-31.)  "HR stated the request to reassign was 'proper' but

offer[ed] no policy to follow or further guidance."  (*Id.* ¶ 32.)

On January 19, 2023, "Plaintiff was conducting a walk-through with Nurse Supervisors when he discovered Reboul was still at the facility one-hour after the official end to her shift."  (*Id.* ¶ 33.)  This meant that Reboul was likely working "unauthorized overtime."  (*Id.* ¶¶ 34-36.)  "Plaintiff attempted to address Reboul's ongoing shift issue, but Reboul curtly replied, 'I'm on the phone with the pharmacy.'"  (*Id.* ¶ 37.)  "Plaintiff asked if a nurse or supervisor could take over" and "Reboul proceeded to scream at Plaintiff, 'Call Kevin, call Kevin, call Kevin!'" *i.e.*, DON Kevin Anderson ("Anderson"). (*Id.* ¶¶ 38-39.)  "Plaintiff did not want Reboul to continue causing a scene and left the situation."  (*Id.* ¶ 40.)

"When Plaintiff was in the parking lot he received a call from [Anderson] who instructed him to go home and not return."  (*Id.* ¶ 41.)  Then, "[w]hile on his way home Plaintiff received a notice of an allegation of abuse to one of the veteran's clients.  The abuse officer . . . was called and the task of reporting was delegated to Plaintiff."  (*Id.* ¶ 42.) "Due to the prior directive by [Anderson], Plaintiff attempted to delegate the reporting duty to one of the on-duty supervisors, but all were busy with prior obligations and duties."  (*Id.* ¶ 43.)  "Additionally, one of the supervisors was new and did not have the knowledge or experience of the proper reporting procedure."  (*Id.* ¶ 44.)  "As the issue of filing was time-sensitive, and Plaintiff did not have his work computer, Plaintiff returned to facility [sic] and met with the new on-duty supervisor and trained her in the steps to formally file the complaint."  (*Id.* ¶ 45.)

On January 20, 2023, "[w]hen Plaintiff returned to work . . . , the [DON] met with him to address the ongoing issues with Reboul including his attempt to address the unauthorized overtime issue."  (*Id.* ¶ 46.)  "[T]he DON . . . relayed information to him about HR's ongoing investigation stemming from Reboul's accusations" (*id.* ¶ 47) and "[t]he DON informed Plaintiff the HR deemed him guilty and the aggressor in the situation based on the fact he was a male employee."  (*Id.* ¶ 48.)  "Plaintiff believed . . . that this mistreatment was discrimination based on his gender/sex" and "immediately filed an

EEOC, and copies were sent to the DON and the Administrator." (*Id.* ¶¶ 49, 50.)

Later that week, "[t]he Administrator informed Plaintiff that he . . . was being placed on indefinite administrative leave." (*Id.* ¶¶ 53-54.) "No concrete reasons were given to Plaintiff for this action" but "Plaintiff believes this was in response to Reboul's false accusations against him, discrimination based on his sex/gender, and in response to his filing" documents with the EEOC. (*Id.* ¶¶ 55-56.) "Plaintiff was out on administrative leave for sixteen weeks" (*id.* ¶ 57), which "[t]o Plaintiff's knowledge . . . was the longest time an employee has been put on administrative leave" (*id.* ¶ 58).

### B.    Other Protected Activity

"In the course of performing his duties, Plaintiff was made aware that ADVS was engaged in illegal, unlawful or potentially noncompliant activity in violation of veteran's rights that were clients of Defendant." (*Id.* ¶ 59.) "Plaintiff was informed by representatives of these veterans that they intended to file a lawsuit on behalf of veterans for violation of their rights by ADVS." (*Id.* ¶ 60.) "Plaintiff discussed the alleged violations with [Cook] and [Anderson]," as well as "with a number of individuals including veteran services reps." (*Id.* ¶ 62.) "All acknowledged the potential violations and [Cook] and [Anderson] were aware of Plaintiff raising concern about the violations and a potential pending lawsuit." (*Id.* ¶ 63.)

### C.    Termination

"On May 10, 2023, HR called Plaintiff and informed him the investigation [regarding Reboul's accusation] was complete and no claims were substantiated." (*Id.* ¶ 65.) "HR then requested Plaintiff to come to the facility." (*Id.* ¶ 66.) "Upon arrival, Plaintiff met with [Cook], and HR representative Melissa Gomez" and was informed that "he was now being terminated as an 'at will' employee and he was no longer employed by the State." (*Id.* ¶ 67.) "Upon information and believe [sic], Plaintiff has come to understand that HR fabricated about the 'no findings' in their investigation in order to remove Plaintiff and deny his due process right to appeal disciplinary actions to the ADOA [Arizona Department of Administration]." (*Id.* ¶ 68.) "In totality, Plaintiff was put on

administrative leave and ultimate[ly] terminated after speaking up about potential illegal activities and violations of veterans' rights within the agency as well as filing a complaint with the EEOC." (*Id.* ¶ 69.) "[T]hroughout this process, false accusations made by Reboul through a six-page report to HR as well as defamatory comments were made about Plaintiff to clients of the agency, which further damaged his reputation and professional standing." (*Id.* ¶ 70.)

"As a direct and proximate result of Defendants' violations of Plaintiff's protected rights . . . Plaintiff suffered . . . pain, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, fear, depression, loss of sleep, care, affection, companionship, and other aspects of the marital relationship, change in demeanor, and harmed reputation at work.  Plaintiff also incurred medical expenses." (*Id.* ¶ 134.)

III.    Procedural History

On November 2, 2023, ADVS received a notice that Plaintiff had filed a formal charge of discrimination with the EEOC.  (Doc 22-4.)

On January 16, 2024, the EEOC issued Plaintiff a right to sue letter.  (Doc. 19 at 26-29.)

On April 15, 2024, Plaintiff (who was then proceeding *pro se*) filed the original complaint in this action.  (Doc. 1.)  The complaint named 15 defendants, including ADVS, Reboul, the State of Arizona, and various individual state employees.  (*Id.* at 2-3.)  The complaint asserted 10 claims for relief: discrimination based on sex, retaliation, libel, slander, negligent infliction of emotional distress, intentional infliction of emotional distress ("IIED"), wrongful termination, violation of the Family Medical Leave Act, violation of the Whistleblower Protection Act, and hostile work environment.  (*Id.* at 9-12.)

On October 25, 2024, Plaintiff (now represented by counsel) filed his operative pleading, the FAC.  (Doc. 19.)  In contrast to the original complaint, the FAC names only three defendants: ADVS, Reboul, and "John/Jane Doe." (*Id.*)  Also, the FAC asserts only six claims.  Count One is a claim that ADVS wrongfully discharged Plaintiff in violation

of A.R.S. § 23-1501(C)(3). (*Id.* ¶¶ 73-86.) Count Two is a claim that ADVS retaliated against Plaintiff in violation of A.R.S. § 38-1501(A). (*Id.* ¶¶ 87-98.) Count Three is a claim for unlawful discrimination based on Plaintiff's sex/gender in violation of Title VII. (*Id.* ¶¶ 99-110.) Count Four is a claim for retaliation in violation of Title VII. (*Id.* ¶¶ 111-23.) Count Five is a claim for IIED against ADVS. (*Id.* ¶¶ 124-27.) Count Six is a claim for defamation against both Defendants. (*Id.* ¶¶ 128-33.)

On November 22, 2024, Defendants filed the pending motion to dismiss. (Doc. 22.) The motion is now fully briefed and neither side requested oral argument. (Docs. 27, 28.)

**DISCUSSION**

I.    <u>Legal Standard</u>

A.    **Motion To Dismiss**

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

B.    **Judicial Notice**

"Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "A court may, however, consider certain materials—documents attached to the

1    complaint, documents incorporated by reference in the complaint, or matters of judicial

2    notice—without converting the motion to dismiss into a motion for summary judgment."

3    *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  For materials incorporated by

4    reference, "[a] court may consider evidence on which the complaint 'necessarily relies' if:

5    (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim;

6    and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."

7    *Marder*, 450 F.3d at 448.  A court may also "take judicial notice of 'matters of public

8    record' without converting a motion to dismiss into a motion for summary judgment."  *Lee*

9    *v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by*

10   *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

11   II.    Merits

12          A.    **Proper Party**

13          Defendants argue that ADVS is a "non-jural entity" under Arizona law and therefore

14   "is not legally capable of being sued."  (Doc. 22 at 3-4.)  In response, Plaintiff appears to

15   concede that ADVS is a non-jural entity but argues that he "properly served the associated

16   jural entity, the State of Arizona" and that "Defendant's Counsel was aware the proper

17   jural entity was served."  (Doc. 27 at 4-5.)  As such, Plaintiff argues that he should be

18   allowed to "correct the caption" and "file an amended Complaint or substitute."  (*Id.* at 5.)

19   In reply, Defendants "acknowledge that the State of Arizona, despite not being a named

20   party to the FAC, waived service of Ruggles' initial complaint."  (Doc. 28 at 2.)

21          "In Arizona, a plaintiff may sue a government entity only if the state legislature has

22   granted that entity the power to sue or be sued."  *Neeley v. Arizona*, 2022 WL 44676, *7

23   (D. Ariz. 2022).  *See also Nelson v. Ariz. Dep't of Economic Security*, 2021 WL 3472742,

24   *1 (D. Ariz. 2021).  Plaintiff has not cited any statutes or cases suggesting that ADVS is a

25   jural entity and appears to concede that ADVS is a non-jural entity.  ADVS is therefore

26   dismissed.

27          Although this conclusion arguably obviates the need to consider ADVS's alternative

28   merits-based dismissal arguments regarding Counts One through Six, the Court will

address those arguments in the ensuing portions of this order because (1) those arguments sometimes, but not always, overlap with Reboul's dismissal arguments, and (2) resolution of those arguments will help inform whether Plaintiff's request for leave to amend as to the State of Arizona is futile.

### B.    Count One

Count One is a claim that ADVS wrongfully terminated Plaintiff in violation of A.R.S. § 23-1501, *i.e.*, the Arizona Employment Protection Act ("AEPA").    (Doc 19 ¶¶ 73-86.)  Under A.R.S. § 23-1501(A)(3)(c)(ii), "[a]n employee has a claim against an employer for termination of employment" if:

> The employer has terminated the employment relationship of an employee in retaliation for . . . [t]he disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.

*Id*.  Thus, to prevail on a claim under this provision of AEPA, Plaintiff "must establish: (1) [he] had information or a reasonable belief that [his] employer or another employee had violated an Arizona statute or constitutional provision; (2) [he] disclosed the information or belief to an employer or a representative of the employer whom [he] reasonably believed was in a managerial or supervisory position and had the authority to investigate the information and take action to prevent further violations of the Arizona constitution or statutes; and (3) [he] was terminated because of the first two steps." *Denogean v. San Tan Behavioral Health Servs., LLC*, 2017 WL 4922035, *3 (D. Ariz. 2017).

Separately, under A.R.S. § 23-1501(A)(3)(c)(i), "[a]n employee has a claim against an employer for termination of employment" if the "employer has terminated the employment relationship of an employee in retaliation for . . . [t]he refusal by the employee

1    to commit an act or omission that would violate the Constitution of Arizona or the statutes

2    of this state."   To prevail on a claim under this provision of AEPA, "Plaintiff must establish

3    that she refused to commit a violation of an Arizona statute or constitutional provision and

4    was terminated due to that refusal."   *Chen v. Cozzoli LLC*, 2022 WL 845190, *5 (D. Ariz.

5    2022).

6          Defendants argue that Count One fails to state a claim because it "does not state a

7    constitutional or statutory provision that [Plaintiff] alleges he refused to violate or that he

8    believes his employer, or a co-worker, violated or threatened to violate." (Doc. 22 at 5-6.)

9    According to Defendants, the FAC's allegations on this issue are "vague and conclusory"

10   and the FAC "fails to even identity what practices [Plaintiff] is concerned might be illegal"

11   or "allege facts to suggest that [Plaintiff's] employer terminated him because he refused to

12   participate in the illusory illegal activity or blew the whistle on someone who did." (*Id.* at

13   6.)   In response, Plaintiff argues that Count One properly states a claim because it

14   "outline[s] his work in dealing with veterans' families and that [he] was made aware by

15   veteran's families that their rights were being violated," further alleges that he brought

16   those concerns to ADVS administrators and "other Veteran Service Representatives," and

17   also alleges "temporal proximity" between that reporting and his termination. (Doc. 27 at

18   6-7.)   In reply, Defendants reiterate that the FAC "fails to identify which statute or

19   Constitutional provision [Plaintiff] believed was being violated or would be violated,"

20   which is a "fundamental element of a wrongful termination claim." (Doc. 28 at 2-3.)

21         Count One fails to state a claim under A.R.S. § 23-1501(A)(3)(c)(ii) because it does

22   not identify the constitutional or statutory provision(s) Plaintiff believed Defendants were

23   violating or would violate.  *See, e.g.*, *Painter v. Katerra Inc.*, 2021 WL 2589736, *4 (D.

24   Ariz. 2021) ("Plaintiff's bare legal conclusion that Defendant was going to violate some

25   unreferenced statute or constitutional provision . . . is insufficient to survive dismissal.").

26   After all, "it would be impossible for even an inference to be made that Plaintiff's belief

27   [that Defendants were violating state law] was 'reasonable' unless the particular statute or

28   constitutional provision is identified by Plaintiff in his pleading."  *Id.*

It is true that some courts have allowed an AEPA claim to proceed even though the plaintiff failed to identify the provision of Arizona law he reasonably believed had been or would be violated. *Foster v. Pinnacle Health Facilities XXI LP*, 2021 WL 4844102, *3 & n.2-3 (D. Ariz. 2021) (canvassing the relevant caselaw and noting that although "[m]any courts have concluded that a plaintiff asserting an AEPA claim must" identify "the Arizona statute that she reasonably believed [the employer] had violated," some courts have not required such identification). The Court has previously explained why such identification should be required at the pleading stage. *Chen*, 2022 WL 845190 at *4 ("To the extent it is necessary to wade into the debate here, the Court is persuaded by the decisions concluding that an AEPA plaintiff must identify the underlying Arizona statute or constitutional provision with specificity at the pleading stage. A plaintiff asserting an unlawful termination claim under § 23-1501(A)(3)(c)(ii) of AEPA does not need to go through the discovery process to determine why she chose to report illegal conduct to her employer—that is historical information uniquely within the plaintiff's possession. If the plaintiff cannot articulate, at the pleading stage of the case, a theory as to why the report was potentially actionable under § 23-1501(A)(3)(c)(ii), there is no point in allowing the case to proceed—as the Ninth Circuit has recognized, a court may dismiss a complaint at the pleading stage due to 'a lack of a cognizable theory.'") (citation omitted). Nevertheless, "even if it might be possible for an AEPA plaintiff to avoid specifying the underlying statutory or constitutional violation in a case where the factual allegations in the complaint are sufficiently detailed to establish that a triggering violation occurred," *Foster*, 2021 WL 4844102 at *3, the FAC only alleges that Plaintiff "was made aware that ADVS was engaged in illegal, unlawful or potentially noncompliant activity in violation of veteran's rights" and that "Plaintiff was informed by representatives by these veterans that they intended to file a lawsuit." (Doc. 19 ¶¶ 59-60.) Missing from these conclusory allegations is any mention of the specific activity that might constitute a "violation of veteran's rights."

The portion of Count One based on A.R.S. § 23-1501(A)(3)(c)(i) fails to state a claim for similar reasons. Although the FAC correctly notes that this provision "prohibits

terminating an employee for refusing to engage in the unlawful conduct/practice" (Doc. 19 ¶ 78), the FAC does not identify the "conduct/practice" that Plaintiff refused to perform, much less identify the provision of Arizona law that this unspecified "conduct/practice" may have violated. *Chen*, 2022 WL 845190 at *5. The FAC also fails to allege that Plaintiff was *asked* to participate in some unspecified and unlawful "conduct/practice." Instead, the FAC only alleges that "Plaintiff was *made aware* that ADVS was engaged in illegal, unlawful or potentially noncompliant activity." (Doc. 19 ¶ 59, emphasis added.)

### C.    **Count Two**

Count Two is a claim that ADVS terminated Plaintiff in violation of A.R.S. § 38-532. (Doc. 19 ¶¶ 87-98.) Under A.R.S. § 38-532(A)(1), "[i]t is a prohibited personnel practice for an employee who has control over personnel actions to take reprisal against an employee for a disclosure of information of a matter of public concern by the employee to a public body that the employee reasonably believes evidences . . . [a] violation of any law." *See also Mullenaux v. Graham Cnty.*, 82 P.3d 362, 367 (Ariz. Ct. App. 2004) (recognizing that A.R.S. § 38-532 creates a cause of action); *Walters v. Maricopa Cnty.*, 990 P.2d 677, 681 (Ariz. Ct. App. 1999) (same). However, Arizona law requires that "[t]he disclosure by an employee to a public body alleging a violation of law . . . be in writing. A.R.S. § 38-352(B).

Defendants argue that Count Two should be dismissed because Plaintiff "does not allege that he made any disclosure of information to a public body; nor does he allege that he made any disclosure in writing." (Doc. 22 at 6-7.) In response, Plaintiff argues that he "receive[ed] information from veterans and their families that ADVS was in violation of Federal and State law" and "disclosed this information to his supervisors" and seems to contend that these allegations are sufficient to state a claim for relief. (Doc. 27 at 8.) But at a minimum, Plaintiff contends he "should be granted leave to amend his whistleblower complaint with additional information." (*Id.* at 9.) In reply, Defendants reiterate that Count Two should be dismissed because Plaintiff "has not plead, or even argued, that he made a written disclosure to a public body." (Doc. 28 at 3.)

Defendants are correct that Count Two fails to state a claim. The FAC does not allege that any of Plaintiff's disclosures were made "in writing," as § 38-252(B) unambiguously requires.

Count Two is also subject to dismissal for the additional reason that the FAC fails to allege that Plaintiff made a "disclosure of information of a matter of public concern . . . *to a public body*. A.R.S. § 38-532(A) (emphasis added). In this context, "Arizona's whistleblower statutes define 'public body' narrowly to mean only 'the attorney general, the legislature, the governor, a federal, state or local law enforcement agency, the county attorney, the governing board of a community college district or school district, the board of supervisors of a county or an agency director.'" *Drake v. City of Eloy*, 2015 WL 6168419, *9 (D. Ariz. 2015) (citing A.R.S. § 37-531(5)). However, the FAC only alleges that Plaintiff disclosed potential wrongdoing to Cook, Anderson, and "a number of individuals including veteran service reps." (Doc. 19 ¶ 62.) Plaintiff has not explained (nor is it readily apparent) how any of these individuals could qualify as a "public body." Other courts have concluded that such reporting is insufficient. *Drake*, 2015 WL 6168419 at *1, *9 (memoranda sent to "the sergeant with immediate supervisory authority" over the plaintiff did not qualify as disclosure to a "public body"); *McCormick v. Arizona Bd. of Regents*, 2007 WL 2948981, *3 (D. Ariz. 2007) (email sent to internal human resources department "was not sent to a 'public body' as defined in the statute").

### D.     Count Three

Count Three is a claim for discrimination on the basis of sex/gender in violation of Title VII. (Doc. 19 ¶¶ 99-110.) Title VII "makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63 (1986) (quoting 42 U.S.C. § 2000e-2(a)(1)).

Defendants argue that Count Three should be dismissed because all of the FAC's allegations "amount to baseless implications that Defendant ADVS placed [Plaintiff] on

administrative leave . . . and ultimately terminated his employment because he is a man." (Doc. 22 at 7-8.)  In support, Defendants cite *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582 (4th Cir. 2014), arguing that the FAC leaves "open for speculation the cause of defendant's decision" and that the FAC's allegations provide an "obvious alternative explanation" to "invidious discrimination"—namely, that Plaintiff was terminated for defying direct orders and because of Reboul's serious allegations against him.  (Doc. 22 at 8-9.)  Defendants also argue that Count Three fails because the FAC lacks "specific factual allegations that [Plaintiff] was treated less favorably than any similarly situated individual."  (*Id.* at 9.)  In response, Plaintiff argues that his claim for disparate treatment is subject to "lowered standard of review" and that he is not required to plead "each element of a prima facie case" but, instead, is only required to allege facts giving "plausible support to a minimal inference" of discriminatory motivation.  (Doc. 27 at 9-10.)  Plaintiff argues that he has met this lower standard by "outlining the history of Reboul's disciplinary and behavior issues, the incident which lead [sic] to Reboul complaining about Plaintiff, and the DON stating directly to Plaintiff that HR viewed him as the aggressor based in-part due to his gender/sex."  (*Id.* at 11.)  In reply, Defendants argue that Plaintiff's proffered pleading standard has been "expressly rejected" by the Ninth Circuit.  (Doc. 28 at 4-5.)  Defendants then reiterate that the FAC fails to allege sufficient facts to support an inference of "invidious discrimination" and "fail[s] to identify a similarly situated individual for purposes of a disparate treatment claim."  (*Id.* at 5-7.)

As a preliminary matter, Plaintiff is correct that he is not required to plead each element of a prima facie case under Title VII to survive a motion to dismiss.  "This Court has never indicated that the requirements for establishing a prima facie case . . . also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).  But Plaintiff is incorrect that Count Three is subject to a lower pleading standard.  Although the Second Circuit has interpreted *Swierkiewicz* as introducing a lower pleading standard for employment discrimination claims, the Ninth Circuit rejected this approach in *Austin v. Univ. of Oregon*,

925 F.3d 1133, 1137 (9th Cir. 2019).  Instead, like any other federal claim, Plaintiff's Title VII claim is governed by Rule 8.  *Swierkiewicz*, 534 U.S. at 508.  Plaintiff must provide "a short and plain statement of the claim showing that [he] is entitled to relief."  Fed. R. Civ. P. 8.  "All factual allegations are accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff."  *Austin*, 925 F.3d at 1137.

Although Plaintiff does not have the burden of establishing a prima facie case at the pleading stage, courts in the Ninth Circuit still "look to the elements of the prima facie case to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1304 (N.D. Cal. 2020) (cleaned up).  A Title VII plaintiff can establish a prima facie case of employment discrimination by showing: "(1) that they are members of a protected class; (2) that they were qualified for their positions and performing their jobs satisfactorily; (3) that they experienced adverse employment actions; and (4) that similarly situated individuals outside their protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination."  *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (cleaned up).

Although it presents a close call, Plaintiff has done just enough to avoid dismissal of his claim for sex-based disparate treatment in Count Three (but for the issue that ADVS is not a proper party, as discussed in Part II.A above).  One of Defendants' arguments is that Plaintiff has failed to establish the fourth element of a prima facie case because he has not alleged that other, similarly situated employees were treated differently.  But this argument overlooks that identification of a similarly situated comparator is only one way to establish discrimination.  The fourth element can also be established via "other circumstances surrounding the adverse employment action give rise to an inference of discrimination."  *Hawn*, 615 F.3d at 1156.  Additionally, "if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case."  *Swierkiewicz*, 534 U.S. at 511.  The FAC alleges that after Reboul filed

a formal complaint against Plaintiff, Plaintiff met with the DON to discuss HR's investigation and "[t]he DON informed Plaintiff the HR deemed him guilty and the aggressor in the situation based on the fact he was a male employee." (Doc. 19 ¶ 48.) Assuming that this allegation is true, the DON's statement constitutes direct evidence of discrimination. *Cf. Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir. 1991) ("The Supreme Court has made clear that sex stereotyping can be evidence of sex discrimination, especially when linked to the employment decision.").

Additionally, as alleged in the complaint, the DON's statement is not a mere "stray remark." In *Nesbit v. Pepsico, Inc.*, 994 F.2d 703 (9th Cir. 1993), the Ninth Circuit concluded that a comment by a supervisor that "'[w]e don't necessarily like grey hair' . . . was uttered in an ambivalent manner and was not tied directly to [the plaintiff's] termination" and was therefore "at best weak circumstantial evidence of discriminatory animus." *Id.* at 705. Similarly, in *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912 (9th Cir.1996), a supervisor's comment that he intended to get rid of all the "old timers" was not direct evidence of discrimination because "the comment was not tied directly to [the] layoff" but was instead uttered "[s]ometime in 1989 or 1990." *Id.* at 915, 919. Here, in contrast, the DON's alleged comment is directly tied to the adverse employment actions involving Plaintiff, because it indicates that HR relied on impermissible stereotypes in the context of the very investigation that led to Plaintiff being placed on involuntary administrative leave and then terminated.[1]

The Fourth Circuit's opinion in *McCleary-Evans* does not compel a different conclusion. There, the court found that a plaintiff failed to allege "circumstances giving

---

[1]    Although it remains to be seen to what extent the DON and HR were themselves decisionmakers regarding the adverse employment actions at issue here, "the animus of a supervisor can affect an employment decision if the supervisor 'influenced *or participated* in the decisionmaking process." *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1281 (9th Cir. 2017) (emphasis added). The FAC plausibly alleges that the DON and HR participated in the relevant decisionmaking processes because (1) HR conducted an investigation into Plaintiff's conduct (Doc. 19 ¶¶ 29, 47), (2) the DON met with Plaintiff regarding the HR investigation (*id.* ¶¶ 47-48), and (3) HR representative Melissa Gomez was present, following the investigation, when Cook "advised Plaintiff he was now being terminated" (*id.* ¶ 67).

rise to an inference of unlawful discrimination" when she alleged that "based upon the history of [the employer's] hires," the employer "predetermined to select . . . a White male or female candidate" for an open position.  780 F.3d at 585-86.  The court concluded that the plaintiff's allegations were "not plausible in light of the 'obvious alternative explanation' that the decisionmakers simply judged those hired to be more qualified and better suited for the positions."  *Id.* at 588.  But here, Plaintiff does not rely on inferences of discriminatory intent arising from a facially neutral pattern of conduct—instead, the FAC specifically alleges that the DON told Plaintiff that HR presumed him guilty based on his gender.  In addition, although courts in the Ninth Circuit "must also consider an 'obvious alternative explanation' for defendant's behavior" when evaluating the plausibility of allegations, *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014), Defendants' proffered alternative explanation is not sufficiently obvious.  To be sure, it's plausible that Plaintiff was placed on administrative leave and then fired because he defied direct orders, had an internal complaint filed against him, and had repeated behavior and performance issues relating to Reboul.  (Doc. 28 at 6.)  But Plaintiff's alternative, discrimination-based explanation is also plausible, and "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).  Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible."  *Eclectic Props. E., LLC*, 751 F.3d at 996 (citation omitted).

One final matter to address in relation to Count Three is whether it states a claim against Reboul.  Although the FAC does not specifically state that Reboul is named as a defendant in Count Three, the FAC specifically clarifies in relation to Counts One, Two, and Five that they are being asserted "As to ADVS Only" or "As to Defendant ADVS Only."  (Doc. 19 at 10, 13, 19.)  The absence of such language in Count Three raises the inference that Reboul is named as a defendant in Count Three.  If so, any such claim is subject to dismissal.  As an initial and dispositive matter, the Ninth Circuit has "long held

that Title VII does not provide a separate cause of action against supervisors or co-workers." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007). *See also Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998) ("[C]ivil liability for employment discrimination does not extend to individual agents of the employer who committed the violations, even if that agent is a supervisory employee."). At any rate, the key allegation underlying Count Three is the allegation that "HR deemed [Plaintiff] guilty and the aggressor in the situation based on the fact he was a male employee." (Doc. 19 ¶ 48.) In other words, the FAC alleges that the decisionmakers who *evaluated* Reboul's complaint did so in a manner that reflected sex-based bias and discrimination. But there is no allegation that Reboul herself acted with sex-based bias when she *filed* the complaint. Therefore, Count Three is dismissed as to Reboul.

### E.    Count Four

Count Four is a claim for retaliation in violation of Title VII. (Doc. 19 ¶¶ 111-23.) "Title VII's antiretaliation provision forbids employer actions that discriminate against an employee . . . because he has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (cleaned up). "To establish a prima facie case, the employee must show that he engaged in a protected activity, he was subsequently subjected to an adverse employment action, and that a causal link exists between the two." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). "The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Id.*

As an initial matter, it is unclear whether Reboul is named as a defendant in Count Four because that Count Four (like Count Three but unlike Counts One, Two, and Five) does not specify that it is being asserted "As to ADVS Only" or "As to Defendant ADVS Only." (Doc. 19 at 17.) At any rate, to the extent Count Four is being asserted against Reboul, it is subject to dismissal for the same reasons as Count Three. *Craig,* 496 F.3d at

1058; *Pink*, 157 F.3d at 1189.

Turning to ADVS, Defendants argue that "Count Four is virtually devoid of factual content" except for the bare allegation that Plaintiff "filed a Charge of Discrimination with the EOCC based upon Title VII." (Doc. 22 at 10.)  Defendants argue this fact is insufficient to support an inference of causation because Plaintiff's "Charge of Discrimination was filed on or around November 2, 2023, but he claimed May 10, 2023, as the date of adverse action" and "[i]t defies logic to complain that an alleged adverse action that occurred before the protected activity was caused by it."  (*Id.*)

In response, Plaintiff argues that Defendants improperly focus on when he filed a formal charge of discrimination with the EEOC and ignore that he "initiated his charge with the EEOC . . . on January 20, 2023, and sent written notification, as well as a copy of the EEOC filing that same day." (Doc. 27 at 12.)  According to Plaintiff, the Court may take judicial notice of these initial EEOC filings and "[i]t is undeniable that Defendants were aware of Plaintiff's engagement in protected activity" before they took adverse employment actions against him.  (*Id.* at 12-13.)  Further, Plaintiff argues that "[a] causal connection can be minimally inferred given the temporal proximity of Plaintiff's protected activity and Defendant's actions."  (*Id.* at 13.)

In reply, Defendants admit that "the facts contained in [Plaintiff's] EEOC Inquiry . . . can be considered because they are contained in an agency's records" but argue that Plaintiff's "email to his supervisors is not part of an agency's records and cannot be considered under judicial notice." (Doc. 28 at 7.)  Further, Defendants argue that an EEOC inquiry "is not the same as a Charge filed with the EEOC" and reiterate that Plaintiff "did not file a Charge of Discrimination . . . until or around November 2, 2023."  (*Id.*)  Defendants also argue that even if Plaintiff's inquiry "turned into his Charge," Count Four must be dismissed because the Charge did not include allegations of retaliation and therefore Plaintiff "did not first exhaust his administrative remedies" before he filed this lawsuit.  (*Id.* at 8-9.)

Although Count Four is not a model of clarity, Plaintiff has done just enough to state

a plausible claim for retaliation (but for the issue that ADVS is not a proper party, as discussed in Part II.A above).  The FAC alleges that on January 20, 2023, Plaintiff met with the DON to discuss Reboul's accusations against him; that after the meeting, Plaintiff believed he was being mistreated "based on his gender/sex"; and that Plaintiff then "immediately filed an EEOC, and copies were sent to the DON and the Administrator." (Doc. 19 ¶¶ 49, 50.)  It isn't immediately apparent what "filed an EEOC" means, but the administrative documents subject to judicial notice make clear that the document Plaintiff filed on January 20, 2023 was an EEOC "inquiry."  (Doc. 27-3 at 2.)  Within a week after Plaintiff filed this inquiry and notified his superiors that he had filed it,[2] "the Administrator informed Plaintiff that . . . he was being placed on indefinite administrative leave."  (Doc. 19 ¶¶ 53-54.)  Less than four months later, on May 10, 2023, Plaintiff's employment was terminated.  (*Id.* ¶ 65.)  This sequence of events plausibly establishes a claim for retaliation.

It is irrelevant, as Defendants argue, that Plaintiff did not formally "file a Charge of Discrimination . . . until or around November 2, 2023," months after his employment was terminated.  (Doc. 28 at 7.)  Although Paragraph 118 of the FAC suggests that Plaintiff's retaliation claim is based on "fil[ing] a Charge . . . with the EEOC," the preceding paragraphs of the FAC (which are incorporated by reference in Count Four), along with the administrative record, make clear that Plaintiff's retaliation claim is actually based on his earlier filing of an EEOC "inquiry" (Doc. 27-3) and his "participation in an EEOC investigation" (Doc. 19 at 17).   This clarification nullifies Defendants' arguments concerning causation.  Although it may be logically impossible for an EEOC charge filed in November 2023 to have caused adverse employment actions that occurred earlier that year, it is perfectly plausible that Plaintiff's EEOC inquiry filed on January 20, 2023 resulted in Plaintiff being placed on administrative leave later that same week and then

---

[2]    Although Defendants are correct that the January 20, 2023 email Plaintiff sent to his superiors "is not part of an agency's records and cannot be considered under judicial notice" (Doc. 28 at 7), the Court need not consider this document to conclude that Plaintiff immediately notified his superiors regarding his EEOC inquiry.  This is because the FAC itself specifically alleges that Plaintiff provided such notification.  (Doc. 19 ¶ 50 ["Plaintiff immediately filed an EEOC, and copies were sent to the DON and the Administrator."]).

fired in May 2023. *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) ("The causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two. Here, . . . approximately seven weeks after Thomas first supported Perry's promotion, Miller informed Thomas that she was being placed on extended probation. We have held that events occurring within similar intervals of time are sufficiently proximate to support an inference of causation.") (cleaned up). *See also Drake v. Living Spaces Furniture LLC*, 2024 WL 4444315, *17 (D. Ariz. 2024) (finding that "close temporal proximity" of "less than two months" between protected activity and adverse employment action supported an inference of causation).

To the extent Defendants argue that filing an EEOC inquiry (as opposed to filing a formal EEOC charge) is not protected activity under Title VII, that argument is unpersuasive. Title VII's antiretaliation provision broadly forbids an employer from discriminating against an employee "because he has opposed a practice that Title VII forbids." *Burlington N. & Santa Fe Ry. Co*, 548 U.S. at 59. "When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn*., 555 U.S. 271, 276 (2009) (cleaned up). By filing an EEOC inquiry and then notifying his employer of that inquiry, Plaintiff engaged in protected activity.

This leaves Defendants' argument, raised for the first time in their reply, that if Plaintiff's retaliation claim is based on the "inquiry" rather than the "Charge," that claim must fail due to a lack of administrative exhaustion. Although it is understandable why Defendants did not raise this argument in their motion—it was not until they reviewed Plaintiff's response that they fully understood the basis for his retaliation claim—the ordinary rule is that "[t]he district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). The Court will apply that rule here for two reasons: first, Plaintiff has not yet had an opportunity to

be heard on the issue of administrative exhaustion; and second, Plaintiff will be required, for the reasons discussed in Part II.A above, to file an amended complaint naming the State of Arizona as a defendant rather than ADVS, so when it comes time for the State of Arizona to respond to that version of the complaint, the parties will have a full and fair opportunity to address the issue of administrative exhaustion on a more complete record.

F.    **Counts Five and Six**

Count Five is a state-law claim for IIED "as to Defendant ADVS only" and Count Six is a state-law claim for defamation "as to all Defendants."  (Doc. 19 ¶¶ 124-133, capitalization omitted.)

Defendants argue that both claims must be dismissed due to Plaintiff's failure to comply with Arizona's "notice of claim" requirement.  (Doc. 22 at 13-14.)  In response, "Plaintiff agrees that Counts Five and Six should be dismissed."  (Doc. 27 at 13.)  Accordingly, Counts Five and Six are dismissed.

III.    Leave To Amend

In his response brief, Plaintiff argues that "[i]n the event the Court is inclined to dismiss any claims that could be otherwise cured through amendment, Plaintiff respectfully asks the Court for leave to amend."  (Doc. 27 at 13.)  Plaintiff also argues that he should be allowed to "correct the caption" and file an amended complaint naming the State of Arizona as the defendant instead of ADVS.  (*Id.* at 5.)  In reply, Defendants only appear to oppose Plaintiff's amendment request with regard to Count Two, arguing that Count Two should be dismissed without leave to amend because Plaintiff has not identified specific facts in his response that would cure the deficiencies identified in their motion.  (*Id.* at 4.)

Rule 15(a) of the Federal Rules of Civil Procedure "advises the court that 'leave [to amend] shall be freely given when justice so requires.'"  *Eminence Cap., LLC v. Aspeon*, *Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted).  "This policy is 'to be applied with extreme liberality.'"  *Id.* (citation omitted).  Thus, leave to amend should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."  *AmerisourceBergen Corp. v.*

1    *Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

2    Applying these standards, Plaintiff's request for leave to amend is granted in

3    significant part.  More specifically, to the extent Plaintiff wishes to amend his complaint

4    to add the State of Arizona as a defendant as to any of the six counts asserted in the FAC,

5    that change is permissible, consistent with the other directives contained in this order.  *Cf.*

6    Fed. R. Civ. P. 15(c) (contemplating the amendment of pleadings to substitute a new

7    defendant, assuming the other requirements of Rule 15(a) are satisfied).  Although Plaintiff

8    has not identified any specific facts he could allege to cure the deficiencies identified above

9    with respect to Count Two, it is at least theoretically possible that those deficiencies can

10   be cured.  Additionally, Plaintiff has only amended his complaint once before in this action,

11   and that amendment was pursuant to the parties' stipulation.  (Doc. 12.)  Therefore, the

12   policy of extreme liberality underlying Rule 15(a) counsels in favor of granting Plaintiff's

13   amendment request as to the State of Arizona.

14   However, to the extent Plaintiff requested leave to amend as to ADVS or Reboul

15   (and it is not clear he did), any such request is denied.  As for ADVS, amendment would

16   be futile because ADVS is a non-jural entity.  As for Reboul, the only claim in the FAC

17   that expressly names Reboul as a defendant is Count Six, which Plaintiff now admits

18   should be dismissed for failure to comply with the notice of claim requirement (a defect

19   that could not be cured through the pleading of additional facts).  Additionally, to the extent

20   Counts Three and Four also named Reboul as a defendant, amendment would be futile

21   under *Craig and Pink*.

22   …

23   …

24   …

25   …

26   …

27   …

28   …

1    Accordingly,

2    **IT IS ORDERED** that Defendants' motion to dismiss (Doc. 22) is **granted**.

3    **IT IS FURTHER ORDERED** that both of the currently named defendants, the

4    Arizona Department of Veteran Services and Angela Reboul, are **dismissed without leave**

5    **to amend**.

6    **IT IS FURTHER ORDERED** that Plaintiff may file a Second Amended

7    Complaint ("SAC"), naming the State of Arizona as a defendant, within 14 days of the

8    issuance of this order.  If Plaintiff files a SAC, the changes shall be limited to attempting

9    to cure the deficiencies raised in this order and Plaintiff shall, consistent with LRCiv 15.1,

10   attach a redlined version of the pleading as an exhibit.

11   Dated this 23rd day of June, 2025.

12

13

14   _____

15   Dominic W. Lanza
     United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28